UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID THOMPSON and TONI THOMPSON, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2120-B |
| | § | |
| BANK OF AMERICA, N.A. as | § | |
| successor by merger to BAC Home | § | |
| Loans Servicing, LP as successor to | § | |
| Countrywide Home Loans, Inc., and | § | |
| U.S. BANK, N.A. AS TRUSTEE FOR | § | |
| THE CERTIFICATE-HOLDERS OF | § | |
| THE LXS 2006-16N TRUST FUND, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (doc. 25), filed by Defendants Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, as successor to Countrywide Home Loans, Inc., and U.S. Bank, N.A., as trustee for the Certificate-Holders of the LXS 2006-16N Trust Fund. For the reasons that follow, Defendants' Motion is **GRANTED**.

## I.

## BACKGROUND[1]

This case arises out of a dispute concerning Plaintiffs' attempts to receive a modification of their mortgage and the subsequent foreclosure sale of their home. Plaintiffs allege that Defendants'

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are undisputed.

conduct during the modification review process and the subsequent foreclosure sale was wrongful. Consequently, they are pursuing the following causes of action: (1) failure to send proper notice regarding the foreclosure, in violation of Section 51.002 of the Texas Property Code; (2) breach of contract and anticipatory breach of contract; (3) unjust enrichment; (4) negligence; (5) using false representations or deceptive means to collect a debt; misrepresenting the character, extent or amount of a consumer debt; attempting to collect charges incidental to the obligation; and wrongfully foreclosing, in violation of the Sections 392.304(a)(19), 392.304(a)(8), 392.303(a)(2), and 392.301(a)(8), respectively, of the Texas Debt Collection Practices Act; (6) negligent misrepresentation; and (7) common law fraud. Plaintiffs seek a declaratory judgment, actual damages, punitive damages, attorneys' fees, and an accounting of all transactions on their mortgage. In addition, they ask the Court either to set aside the acceleration of the loan and reinstate it without any charges or fees, or find the lien invalid. Further, they ask the Court find the Substitute Trustee's Deed void and therefore grant possession of the property to Plaintiffs, or otherwise award Plaintiffs market value of the property less the amount due to Defendants.

A.     *Factual Background*

Plaintiffs David Thompson and Toni Thompson (together, "Plaintiffs") purchased the property located at 422 Whispering Hills Drive, Coppell, Texas 75019 (the "Property") on June 6, 2006 with a loan from Countrywide Home Loans, Inc. ("Countrywide"). First Am. Compl. 3. In conjunction with the purchase, Plaintiffs executed a promissory note (the "Note") and deed of trust (the "Deed of Trust"), which pledged the Property as security for payment of the Note. Defs.' Exs. A-1, A-2. A separate company, Mortgage Electronic Registration Systems, Inc. ("MERS"), was named as the beneficiary as nominee for Countrywide and its successors and assigns. Defs.' Ex. A-2.

MERS, in turn, assigned the Note and Deed of Trust to U.S. Bank. Am. Compl. 3. Bank of America, through BAC Home Loans Servicing, LP ("BAC"), was the loan servicer and agent for U.S. Bank. *Id.*; Defs.' Ex. A.

In the fall of 2009, Plaintiffs experienced "some financial hardship" and contacted Bank of America to discuss any available programs for adjusting their loan payments. Thompson Aff. APP 2.[2] Plaintiffs allege that Bank of America informed them they should continue making their monthly payments, but that they would not qualify for the Home Affordable Modification Program ("HAMP") unless they stopped making payments for a few months. *Id.* Consequently, Plaintiffs contacted Impact Consulting Group ("Impact") for assistance with the modification request. *Id.* Impact communicated with Bank of America on behalf of Plaintiffs throughout the process. Plaintiffs made their last monthly payment on their mortgage on January 27, 2010. Defs.' Ex. A-4. After missing two months payments, Plaintiffs completed and sent the HAMP application to Bank of America in February 2010. Thompson Aff. APP 2.

Over the next three years, Plaintiffs, Impact, and Bank of America engaged in a back-and-forth about Plaintiffs' requests for loan modification. Thompson Aff. APP 2–18. Plaintiffs repeatedly submitted documentation while Bank of America engaged in an "active review" of their application. *Id.* In October 2010, Plaintiffs allege Bank of America informed them their application had "passed the underwriter" and a trial agreement would be sent to the borrower. *Id.* at APP 5–6. In addition, Plaintiffs claim they were told that if they made three payments their loan would go to a permanent modification. *Id.* at APP 6. Despite this information, Plaintiffs never received a trial payment

---

[2] References to pages in the parties' appendices omit the zeroes before numerals. For example, the Court will abbreviate APPENDIX 0029 as "APP 29."

agreement. *Id.* They were later told in November 2010 that their application was denied because their debt-to-income ratio was not below 31%. *Id.* Nevertheless, the file was in a second review. *Id.*

Plaintiffs claim that in March 2011 Bank of America advised Impact that the modification was completed by the underwriter and was with the Quality Control Department for final approval. *Id.* at APP 8. Plaintiffs' file was under review for more than a year when they received a letter in August 2012 that they were not eligible for the modification process. *Id.* at APP 13. It appeared to Plaintiffs that this determination was not based on current information they submitted, but rather on old information that they were still receiving income from a rental property they had previously sold. *Id.* In response, Impact re-submitted documentation to Bank of America to reflect the sale. *Id.*

During this protracted review process, Plaintiffs received several notices of foreclosure and acceleration of payment letters. *See, e.g., id.* at APP 3, 11, 13, 15; Compl. 5, ¶ 16; 10-11, ¶ 32; 11-12, ¶ 35; 16, ¶ 50; 17, ¶ 52; 18, ¶ 56; 19, ¶ 58; 20, ¶ 62; 21, ¶ 69; 21–22, ¶¶ 71, 75. In response, they repeatedly requested, and were granted, postponements of sale. Indeed, sale of Plaintiffs' home was rescheduled twelve times before the Property finally went to auction on January 1, 2013. Thompson Aff. APP 17. As the home was not purchased by a third party, it went to Bank of America's real estate department. *Id.* On January 2, Plaintiffs requested the Property be reinstated to them. *Id.* On January 4, they received a letter indicating they were denied a modification. *Id.* Notably, this letter was dated December 31, 2012, just one day before the home went to auction. *Id.* Plaintiffs claim that, on January 7, 2013, the online portal that had been used to display status updates of their file reported that the HAMP denial was final. *Id.*

Plaintiffs contacted attorney Rocky Feemster on January 9, 2013 for assistance in reinstating the loan and/or modification process. Thompson Aff. APP 18. Mr. Feemster drafted a letter to Bank

of America outlining his clients' concerns and requests. *Id.* In response, Bank of America wrote a letter indicating that it had reviewed Plaintiffs' file and determined the foreclosure was proper and their requests for rescission of the loan foreclosure and for loan modification were denied. *Id.*

B.     *Procedural Background*

On May 18, 2013, Plaintiffs filed their Verified Original Petition, Application for Temporary Restraining Order, and Request for Disclosure in County Court at Law No. 5, Dallas County, Texas. Doc. 1-1. Defendants removed the case to this Court on June 5, 2013. Doc. 1. Shortly thereafter, on June 12, 2013, Defendants filed their Motion to Dismiss (doc. 4). On July 2, 2013, Plaintiffs filed their First Amended Complaint (doc. 7). Consequently, the Court found Defendants' Motion to Dismiss moot (doc. 8). On December 16, 2013, Defendants filed their present Motion for Summary Judgment (doc. 25). Plaintiffs filed their Response (doc. 35) on January 16, 2014. Defendants filed their Reply (doc. 38) on January 30, 2014.[3] The Motion is now ripe for review.[4]

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that,

---

[3] Defendants included in their Reply a section entitled "II. Objections & Motion to Strike," in which they object to, and move to strike, three of Plaintiffs' exhibits. Defs.' Reply 2–4. Plaintiffs argue in a separate response (doc. 40) that Defendants' objections should be disregarded, in part, because Defendants styled them as a motion but failed to include a certificate of conference. Pls. Resp. Mot. Str. 2–3. The Court finds this argument unconvincing and construes Defendants' challenge as objections, which the Court addresses as part of its analysis of the summary judgment motion.

[4] Defendants also filed a Motion to Dismiss Plaintiffs' First Amended Complaint (doc. 15) on July 23, 2013. On January 14, 2014, the Court denied the motion without prejudice and reserved for summary judgment ruling on the issues raised in Defendants' briefing therein. Doc. 34.

as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence

supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.

## ANALYSIS

Defendants move for summary judgment on all of Plaintiffs' claims. The Court reviews each claim, in turn, below.

A.      *Section 51.002 of Texas Property Code*

Plaintiffs allege two violations of the Texas Property Code. First, they claim that Defendants violated Section 51.002(d) by failing to send a notice of default or a right to cure. First Am. Compl. 27–28. Next, they claim that Defendants violated Sections 51.002(b)(3) and 51.002(e) because Plaintiffs never received notice of the foreclosure sale by certified mail. *Id.* at 28. Defendants argue that Plaintiffs are judicially estopped from arguing lack of notice because they state in their complaint that they received notice the loan was in default and notice of various foreclosure sales. Defs.' Br. 7–8. Further, they argue that the Property Code only requires that Defendants send notice, not that Plaintiffs actually receive it. *Id.* at 8. Thus, Defendants insist Plaintiffs' claim must fail.

Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. In particular, it provides that a mortgage servicer must serve a debtor in default with written notice by certified mail stating that the debtor is in default and giving him at least 20 days to cure before notice sale can be given. Tex. Prop. Code. § 51.002(d). Notice of sale,

in turn, must be given at least 21 days before the date of sale by serving written notice of the sale by certified mail on each debtor who is obligated to pay. *Id.* at § 51.002(b)(3). Actual notice of default or of sale is not required. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). Indeed, the statute is clear that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. . . ." Tex. Prop. Code § 51.002(e).

With respect to the notice of default, Defendants have produced competent evidence that they sent Plaintiffs by certified mail several notices of default which appropriately notified the Plaintiffs of their default, their right to cure, the amount needed to cure, and a date by which to cure in order to avoid acceleration. *See* Defs.' Ex. A APP 2; Ex. A-5 APP 51–64. This evidence establishes that Defendants complied with the requirements under § 51.002(d). Tex. Prop. Code § 51.002(d).

Regarding the notice of sale, Plaintiffs have admitted in their affidavit that they received notices of sale, including on December 7, 2012 for a sale set January 1, 2013.[5] Thompson Aff. APP 16. Even if Plaintiffs had not made such a concession, their allegation that they never *received* such notices would still not establish a claim under the Texas Property Code. *See* First Am. Compl. 8 at ¶ 99 ("Plaintiff never received a Notice of Default and Right Cure as required by Texas Property code Section 51.002(d)"); *id.* at ¶ 101 ("Plaintiff never received notice by certified mail and thus further violated the Texas Property Code."). "The mere allegation by plaintiffs that they did not receive notice does not show that [Defendant] failed to comply with the statutory requirements."

---

[5] Defendants have also provided evidence of these notices and an affidavit from an employee of ReconTrust Company, N.A., substitute trustee, that states that proper service of the notice of acceleration of indebtedness and of sale was served on Plaintiffs. Defs.' Exs. B-1, B-2, B-3 APP 69–73.

*Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11-CV-388-A, 2012 WL 1870923, at *5 (N.D. Tex. May 23, 2012). This is because "[t]here is no requirement that [Plaintiffs] receive the notice." *Martins*, 722 F.3d at 256; *see also Clark v. F.D.I.C.*, 849 F. Supp. 2d 736, 747 (S.D. Tex. 2011) ("Plaintiffs' objection that they did not receive one or more notices required by law is not relevant.").

In light of Defendants' uncontroverted evidence and Plaintiffs' clear admission, the Court finds that Defendants have satisfied their obligations under the Texas Property Code. The Court therefore **GRANTS** Defendants' motion for summary judgment with respect to this cause of action.

B.    *Breach of Contract and Anticipatory Breach of Contract*

The Court now turns to Plaintiffs' related claims of breach of contract and anticipatory breach of contract.

1    Breach of Contract

Under Texas law, "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Plaintiffs first allege that Defendants breached Paragraphs 19 and 22 of the Deed of Trust. First Am. Compl. 31. These provide, in part:

> 19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment

enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument . . . ; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. . . .

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Defs.' Ex. A-2 APP 19–21.

With respect to Paragraph 19, Plaintiffs nowhere explain how Defendants breached their obligations thereunder. In fact, Plaintiffs only address Paragraph 19 in passing within their complaint. *See* First Am. Compl. 31 ("Therefore, Defendants waived their right to accelerate and foreclose, and pursuing those methods constitutes breaches of the Deed of Trust contract at paragraphs 19 and 22."). As there is no indication that Plaintiffs met any conditions that would afford them the right to have enforcement of the Deed of Trust discontinued, the Court finds they have failed to establish a breach of contract with respect to this provision.

Regarding Paragraph 22, review of the summary judgment evidence shows that Defendants were in fact in compliance. For example, the December 21, 2009 Notice of Default that was sent to

Plaintiffs specified: (1) that Plaintiffs were in default; (2) that BAC Home Loans Servicing, LP had to receive $3,294.01 plus any additional charges, payments, or fees on or before January 20, 2010, in order for Plaintiffs to cure; (3) that, if Plaintiffs failed to cure the default, the mortgage payments would be accelerated and foreclosure proceedings would be initiated; and (4) that Plaintiffs may have the right to bring a court action to assert the non-existence of a default or any other defense to the acceleration and foreclosure. *See* Defs.' Ex. A-5 APP 50–52. In addition, Plaintiffs concede throughout their affidavit that they received acceleration notices. *See, e.g.,* Thompson Aff. APP 7 ("Also received at that same time was an acceleration notice in the amount of $214,697.61."); *id.* at APP 8 ("We also received an acceleration letter in the amount of $214,697.61."). Based on this proof and Plaintiffs' failure to develop their argument, the Court finds that Defendants did not breach paragraph 22 of the Deed of Trust.[6]

The Court considers Plaintiffs' next argument that, even if Defendants provided the required notices, foreclosure of their property was improper because Defendants waived their right to accelerate and foreclose. First Am. Compl. 29; Pls.' Resp. 15–16. In particular, Plaintiffs claim that, by postponing the sale of Plaintiffs' home 12 times while reviewing their request for a modification, Defendants' conduct raised an inference and misled Plaintiffs that they intended to waive their right to foreclose. Pls.' Resp. 15–16. Defendants insist they did not waive their right and offer several

---

[6] Plaintiffs argue that they should be able to pursue their breach of contract claim with respect to the notice of acceleration even though they were in default on their mortgage. Pls.' Resp. 14. They rely on *Hernandez v. U.S. Bank, N.A.*, No. 3:13–CV–2164–O, 2013 WL 6840022, at *6 (N.D. Tex. Dec. 27, 2013) (slip copy), for support. *Id.* While *Hernandez* does make clear that a claim for failure to provide notice is actionable even if plaintiffs are in default on their mortgage, the case is ultimately of no use to Plaintiffs here. Defendants satisfied their obligation to notify Plaintiffs, and Plaintiffs have conceded that they received acceleration notices. *See, e.g.,* Thompson Aff. APP 7 ("Also received at that same time was an acceleration notice in the amount of $214,697.61"). As there is no breach to establish their claim, their default is of no consequence.

reasons why. Defs.' Br. 9. First, they argue Plaintiffs had no contractual right to prevent foreclosure as Defendants never agreed to modify the original loan terms. *Id.* at 10. Further, Bank of America never made any affirmative representations to Plaintiffs regarding its right to foreclose; Bank of America only agreed to submit Plaintiffs' requests to postpone the sales and therefore reaffirmed its ultimate right to foreclose. *Id.* at 11. In addition, because Plaintiffs base their waiver claim on alleged oral representations, Defendants argue, their claim is barred by the statute of frauds. *Id.* at 12. Defendants also point out that Plaintiffs have failed to prove they relied on any alleged subsequent agreement to postpone foreclosure, or to demonstrate that Defendants manifested any intent *not* to enforce the indebtedness. *Id.* at 13.

To prove waiver, Plaintiffs must show: "(1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 810 (N.D. Tex. 2012) (internal quotation marks omitted). For a claim of waiver based on inference, Plaintiffs have the "onerous burden to produce conclusive evidence that the opposite party unequivocably [sic] manifested its intent to no longer assert its claim." *Id.* (alteration in original) (internal quotation marks omitted).

The Court finds that Plaintiffs have not demonstrated Defendants' unequivocal manifestations of their intent not to assert their rights. Both the Note and Deed of Trust have provisions that clearly express the Defendants' intent to maintain its right to accelerate and foreclose. For example, subpart (D) of Paragraph 7 of the Note, entitled "No Waiver By Note Holder," states: "Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later

time." Defs.' Ex. A-1 APP 7. Further, Paragraph 11 states, in part, "If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. . . . If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower." *Id.* at APP 8. In addition, Paragraph 12 of the Deed of Trust states:

> 12. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. . . . Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, *shall not be a waiver* of or preclude the exercise of any right or remedy."

Defs.' Ex. A-2 APP 18 (emphasis added). Though the Court recognizes that a nonwaiver clause may, in some circumstances, be waived, Plaintiffs have failed to show those circumstances are present here. *See U.S. Bank, N.A. v. Kobernick*, 454 F. App'x 307, 315 (5th Cir. 2011) (citing *Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108 (Tex. App.—Houston [14th Dist.] 1995, writ denied)).

Plaintiffs have also failed to persuade the Court that their case is analogous to the authorities on which they rely for waiver. For example, Plaintiffs cite *Longview Savings & Loan Association v. Nabours*, 673 S.W.2d 357 (Tex. App.—Texarkana 1984), *aff'd* 700 S.W.2d 901 (Tex. 1985), for support. However, in *Longview* there was considerable evidence that one of the defendant's officers had represented to plaintiff the bank did not intend to foreclose; the bank had a policy of not foreclosing in similar circumstances; and plaintiff had been told that even if the bank gave notice of its intent to enforce its rights, the notice would only be a formality and he should not be concerned.

673 S.W.2d at 361. Here, the twenty-page section of the affidavit to which Plaintiffs refer the Court demonstrates only that Bank of America stated their application for a loan modification was *under review* and agreed to *submit their requests* to postpone the foreclosure sales. *See, e.g.,* Thompson Aff. APP 2–3 ("On April 19, 2010 at 2:35 p.m., Grace from BOA told us that the file was under review."); *id.* at App. 4 ("Rene said that once the file was assigned the request for postponement sale could be made. On June 23, 2010, BOA confirmed our file was in review.")).

Similarly misplaced is Plaintiffs' reliance on *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex. App.—Corpus Christi 1980, no pet.), for the general proposition that "loss of the right to accelerate may result from inconsistent or inequitable conduct on the part of the holder of a promissory note." In *McGowan*, defendants had accepted from plaintiffs 18 monthly payments on their note, all of which were made by checks dated between the 1st and 10th of each month, before accelerating the indebtedness following one late payment. *Id.* The *McGowan* court found that it was unjust for defendants to accelerate following one late payment, and therefore held that "where . . . the holder of a note has accepted late payments on numerous occasions in the past, he is precluded from accelerating the maturity of an installment note because of a single late payment unless he has . . . notified the maker that in the future he will not accept late payments." *Id.* at 732. There is no evidence that Defendants had previously accepted late payments before accelerating the Note after Plaintiffs' default. There is also no evidence that Defendants advised Plaintiffs to stop making monthly payments or misled them that they would not foreclose. Plaintiffs' affidavit states only that "BOA told us that we *would not qualify* for the Home Affordable Modification Program ('HAMP') unless we stopped making payments for a few months." Thompson Aff. APP 2. This is a statement about the eligibility requirements for HAMP; it is not an instruction to default on one's mortgage.

- 14 -

It does not therefore prove waiver by inconsistent or inequitable conduct.

Plaintiffs' related argument regarding promissory estoppel is also unpersuasive. "To state a claim for promissory estoppel a plaintiff must plead (a) a promise, (b) foreseeability of reliance by the promisor, (c) substantial and reasonable reliance by the promisee to its detriment, and (d) enforcement of the promise is necessary to avoid injustice." *Motten v. Chase Home Finance*, 831 F. Supp. 2d 988, 1002 (S.D. Tex. 2011). "A claim of promissory estoppel generally cannot be used to circumvent Texas' statute of frauds, which requires certain 'promises' to be in writing." *Ezennia v. Wells Fargo Bank, N.A.*, No. H–10–5004, 2012 WL 1556170, at *4 (S.D. Tex. April 27, 2012); Tex. Bus. & Com. Code § 26.02 (b). Only when the alleged promise is a promise to sign an already existing written agreement that itself would satisfy the requirements of the statue of frauds, will a claim of promissory estoppel survive. *George-Baunchand v. Wells Fargo Home Mort., Inc.*, No. H–10–3828, 2011 WL 6250785, at *8 (S.D. Tex. Dec. 14, 2011).

As an initial matter, Plaintiffs have not pleaded promissory estoppel but rather offered it as a defense to Defendants' argument that the statute of frauds bars their claim of waiver. Pls.' Resp. 16–17. Nevertheless, they insist that foreclosure was unjust because "Defendants promised [them] repeatedly over three years that it [sic] would modify their loan and represented to Plaintiffs that the modification was almost complete." *Id.* at 17–18. This argument is flawed for a number of reasons.

First, Plaintiffs seem to conflate *review* of an application with *approval* of an application. From the evidence submitted, Defendants did not "promise" to approve their application. Second, though Plaintiffs' account of the exchange regarding a possible trial agreement comes close to showing that they were told their loan modification was complete, it is not enough to save their defense. *See* Thompson Aff. APP 5–6 ("On October 25, 2010, our file passed the underwriter and we were told

that in the next week or two a trial agreement would be sent to us. Brian, a BOA representative, said that if we made the three payments, then the loan would go to a permanent modification.") (internal citations omitted). An agreement to modify an existing loan must comply with the statute of frauds. *See Holloway v. Wells Fargo Bank, N.A.*, No. 3:12–CV–2184–G (BH), 2013 WL 1187156, at *16 (N.D. Tex. Feb. 26, 2013). Here, Plaintiffs have failed to allege or introduce evidence that Bank of America promised to reduce these alleged oral representations to writing. *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013). Further, "for many years, Texas courts have held that promissory estoppel becomes available to a claimant only in the *absence* of a valid and enforceable contract." *Tremble v. Wells Fargo Home Mortg., Inc.*, 478 F. App'x 164, 166 (5th Cir. 2012) (per curiam) (internal quotation marks omitted) (emphasis in original). Plaintiffs do not dispute the Deed of Trust is a valid and enforceable contract, or that it expressly provides the lender does not waive its right to seek remedy in the event of default. *See id.* For these several reasons, the Court is unpersuaded by Plaintiffs' promissory estoppel defense.

The Court is likewise unconvinced by Plaintiffs' argument with respect to "course of performance." Though the Court recognizes that "[c]ourse of performance may be relevant to show waiver or modification of a written term," it is inapplicable to this case. *Anaheim Indus., Inc. v. Gen. Motors Corp.*, 2007 WL 4554213, at *6 (Tex. App.—Houston [1st Dist.] 2007, no writ). The Texas Commercial Code, which enacted the Uniform Commercial Code ("UCC") in Texas, does lay out the elements of "course of performance" as Plaintiffs describe in their complaint. First Am. Compl. 30. However, the UCC does not apply to foreclosure efforts. *Tremble*, 478 F. App'x at 166. "As other courts applying Texas law have held, '[b]ecause the Deed of Trust places a lien on real property, it is not governed by the UCC.'" *Carrillo v. Bank of Am., N.A.*, No. H–12–3096, 2013 WL 1558320,

at *3 (S.D. Tex. April 11, 2013) (quoting *Vogel v. Travelers Indem. Co.*, 966 S.W.2d 748, 753 (Tex. App.—San Antonio,1998, no pet.)); Tex. Comm. Code § 9.109(d)(11) (stating that the UCC does not generally apply to secured transactions involving the "creation or transfer of an interest in or lien on real property"). Accordingly, Plaintiffs cannot rely on this provision to support their claim of waiver.

For the foregoing reasons, the Court finds that Plaintiffs have fallen short of the difficult task of showing waiver by inference. The Court therefore **GRANTS** Defendants' motion for summary judgment with respect to breach of contract.

### 2.    Anticipatory Breach of Contract

To establish a claim for anticipatory breach, Plaintiffs must show: "(1) an absolute repudiation of the obligation; (2) a lack of just excuse for the repudiation; and (3) damage to the nonrepudiating party." *Swim v. Bank of Am., N.A.*, No. 3:11–CV–1240–M, 2012 WL 170758, at *4 (citing *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)). "An anticipatory repudiation of a contract may be based on either words or actions by a party that indicate an intention not to perform the contract according to its terms." *Swim*, 2012 WL 170758, at *4. However, the declaration of intent to abandon the obligation must be in positive and unconditional terms. *Id.*

Though Plaintiffs include "Anticipatory Breach of Contract" in the title for one of their causes of action in their complaint, they otherwise fail to address this particular claim. *See* First Am. Compl. 28 ("Breach of Contract and Anticipatory Breach of Contract"). Further, for the reasons discussed above, the Court finds no evidence of Defendants' "words or actions positively and unconditionally demonstrating an intent to abandon their obligations" under the Deed of Trust or Note. Accordingly, Plaintiffs' anticipatory breach of contract claim fails as a matter of law, and

Defendants' motion with respect thereto is **GRANTED.**

C.    *Unjust Enrichment*

The Court next considers Plaintiffs' claim of unjust enrichment. Plaintiffs allege that Defendants have engaged in unlawful collection activities by (1) misrepresenting that they had legal capacity to collect on Plaintiffs' mortgage loan or foreclose; (2) deceptively foreclosing upon the Property despite Plaintiffs' compliance with Bank of America's demands regarding a loan modification and despite the loan being in underwriting; and (3) collecting illegal fees related to improper foreclosure. First Am. Compl. 31–32. They further claim that Defendants have wrongfully secured or passively received a benefit from Plaintiffs in the form of foreclosure and improper fees. *Id.* at 32. Defendants argue that it is in fact Plaintiffs who have been unjustly enriched by maintaining possession of the Property without paying the mortgage in three years. Defs.' Br. 20. Further, any benefit Defendants have received was pursuant to the Deed of Trust, which Plaintiffs signed voluntarily. *Id.* at 20–21. Finally, Defendants argue that Plaintiffs cannot recover under a claim of unjust enrichment because an express contract existed between the parties at the time the cause of action arose. *Id.* at 21.

In Texas, a plaintiff may recover for unjust enrichment if the defendant has "obtained a benefit from [plaintiff] by fraud, duress, or the taking of an undue advantage." *Merryman v. JPMorgan Chase & Co.*, No. 3:12–CV–2156–M(BH), 2013 WL 497883, at *6 (N.D. Tex. Jan. 16, 2013) (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "Unjust enrichment is a quasi-contractual claim that is based on the absence of an express agreement." *Anderson v. CitiMortgage*, No. 4:10–CV–398, 2011 WL 1113494, at *6 (E.D. Tex. Mar. 24, 2011). Consequently, "[u]nder Texas law, there can be no claim for unjust enrichment when there is a

binding contract between the parties." *Bircher v. Bank of New York Mellon*, No. 4:12–CV–171–Y, 2012 WL 3245991, at *7 (N.D. Tex. Aug. 9, 2012).

As an initial matter, the Court notes that Plaintiffs were not precluded from asserting claims for breach of contract and unjust enrichment even though such claims are inconsistent. *See Baisden v. I'm Ready Prods., Inc.*, No. H–08–0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008). This is because the contracts underlying the claim for breach could later have been held as invalid. *See Waller v. DB3 Holdings, Inc.*, No. 3:07–CV–0491–D, 2008 WL 373155, at *6 (N.D. Tex. Feb. 12, 2008). However, having offered no evidence to undermine the construction or validity of the Deed of Trust, which covers the parties' rights and obligations with respect to foreclosure, Plaintiffs' claim for unjust enrichment must now fail. "[T]here can be no recovery for unjust enrichment under a quasi-contract or contract implied-in-law theory when a valid, express contract covers the subject matter of the parties' dispute." *Patterson v. Long Beach Mortg. Co.*, No. 3:07–CV–1602–O–BH, 2009 WL 4884151, at *8 (N.D. Tex. Dec. 15, 2009); *see also Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App.—Texarkana 1996), *aff'd* by 966 S.W.2d 467 (Tex. 1998) ("A remedy such as unjust enrichment . . . is unavailable when a valid, express contract governing the subject matter of the dispute exists."). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment with respect to this claim.

D.    *Negligence*

The Court next turns to Plaintiffs' negligence claim. Plaintiffs allege that Bank of America "negligently serviced [their] loan and breached its duty to fulfill its obligations of maintenance, accounting, and servicing of the loan in a non-negligent manner." First Am. Compl. 32. "Specifically, [Bank of America] negligently communicated information about the status of Plaintiffs' loan

- 19 -

modification and foreclosure sale." *Id.* at 33. Plaintiffs further argue in their Response that "Defendants did not exercise a reasonable degree of care, skill, and ability," by communicating poorly and giving them conflicting information. Pls.' Resp. 22. As a result, Plaintiffs claim they suffered severe mental anguish and emotional distress. First Am. Compl. 33. Defendants insist that Plaintiffs' negligence claim is barred by the economic loss doctrine. Defs.' Br. 14. In addition, they argue that Plaintiffs cannot show that Defendants made any misrepresentation to them or that Defendants owed them a legal duty. *Id.* at 15–17. Further, any duty Defendants did owe Plaintiffs was based on the Deed of Trust, which did not create a duty of care in favor of Plaintiffs. *Id.* at 17. Consequently, they argue the negligence claim must fail as a matter of law. *Id.*

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005). "To show there is a duty in tort based on a contract, the plaintiff must show there is a special relationship between the parties." *Carrington v. Bank of Am., N.A.*, No. H–12–1542, 2013 WL 265946, at *7 (S.D. Tex. Jan. 17, 2013).

Plaintiffs have failed to show that Defendants owed them a duty apart from their obligations under the Note or Deed of Trust. Plaintiffs argue that the Court "should find that lenders have a duty to exercise reasonable care, skill, and ability, especially considering the critical nature of receiving information about foreclosure." *Id.* at 22–23. However, this is insufficient. Not only does no special relationship exist between a mortgagor and a mortgagee, but "courts have held that 'there is no duty of care' between them that would give rise to a negligence claim." *Holloway,* 2013 WL 1187156, at *21; *see also Milton*, 508 F. App'x at 329 (finding servicer did not have special relationship with borrower to give rise to duty to support negligence claim). Though Plaintiffs rightly

point out that "'courts have imposed between a creditor and a debtor or guarantor . . . the duty to discharge its respective contractual obligations properly,'" their observation is incomplete. Pls.' Resp. 22 (quoting *UMLIC VP LLC v. T & M Sales and Env. Sys., Inc.*, 176 S.W.3d 595, 613–14 (Tex. App.—Corpus Christi 2005, no pet.)). As the case on which they rely explains, for purposes of determining whether a claim arising out of a foreclosure sale sounds in tort or contract, if the source of the mortgagee's duty to conduct a foreclosure sale is the deed of trust, the action sounds in contract. *UMLIC VP LLC*, 176 S.W.3d at 613–15.

What's more, "[u]nder the economic loss rule, a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 382–83 (Tex. App.—Tyler 2009, rehearing overruled). Though Plaintiffs have alleged non-economic damages such as "mental anguish and emotional distress, loss of creditworthiness and the value of time lost trying to remedy the problem," these do not avoid the economic loss doctrine. Pls.' Resp. 20. First, Texas law does not recognize negligent infliction of emotional distress as a viable cause of action. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Second, "[a]lthough the Court is unconvinced that Plaintiff could recover for lost time or for a lower credit rating, Plaintiff[s] fail[] to produce any evidence of such damages beyond [their] own affidavit." *Wiley v. U.S. Bank, N.A.*, No. 3:11–CV–1241–B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012). Finally, it is clear that these alleged damages flow solely from the obligations created by the Note and Deed of Trust and would not exist but for the contractual relationship of the parties. *Id.*

To be sure, Bank of America, as servicer to the loan, was not technically a party or assignee to the Note or Deed of Trust. Arguably, then, the negligence claim against it is not barred by the

economic loss doctrine. Assuming *arguendo* a a legal duty exists under these circumstances,[7] Plaintiffs' claim, nonetheless, again fails. Plaintiffs argue that Bank of America breached the duties imposed by HAMP and the Texas Finance Code, but they nowhere specify the duties imposed thereunder or how they were breached. *See* First Am. Compl. 33. Furthermore, as the Court explains in greater detail in its analysis of negligent misrepresentations below, Plaintiffs have not identified competent evidence that statements from Bank of America were actually false or that Bank of America failed to correct any misinformation. Accordingly, Defendants' motion for summary judgment on Plaintiffs' negligence claim is **GRANTED**.

E.    *Negligent Misrepresentation*

The Court now considers Plaintiffs' related claim for negligent misrepresentation. Plaintiffs allege that Bank of America made several misrepresentations and negligently communicated information regarding their application for a modification. In particular, they allege Bank of America told Plaintiffs: (1) their modification was under review; (2) Plaintiffs did not qualify for the HAMP because they were still making payments; (3) Bank of America had received Plaintiffs' documents and then told them their modification was denied because they had *not* received their documents; (4) Plaintiffs' loan modification was in underwriting; and (5) a trial payment plan was being prepared. Pls.' Resp. 21. Despite these alleged misrepresentations, Defendants sold the Property at a foreclosure sale. As a result, Plaintiffs claim they suffered damages, including loss of credit and damage to credit reputation, mental anguish and emotional distress, and lost time. *Id.* at 22.

---

[7] Some courts have recognized that "there is always a duty to correct one's own prior false or misleading statement." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763–64 (N.D. Tex. 2012).

In response, Defendants argue that Plaintiffs have failed to provide any evidence to show Bank of America represented to them that they qualified for a loan modification; that they should disregard foreclosure notices; or that they should cease making mortgage payments while the modification process was pending. Defs.' Br. 16. Further, to the extent Plaintiffs base their claim on Bank of America's alleged promise to postpone the foreclosure sale, Defendants insist their claim must fail because a promise of future conduct is insufficient to support a negligent misrepresentation claim. *Id.*

A claim for negligent misrepresentation has four elements: (1) defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). In addition, "the false information complained of in a negligent misrepresentation claim 'must be a misstatement of an existing fact rather than a promise of future conduct.'" *Montgomery v. SunTrust Mortg., Inc.*, No. 3:10–CV–733–F, 2012 WL 1353087, at *6 (N.D. Tex. April 19, 2012) (citing *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.)).

With respect to the first and fourth alleged misrepresentations—that Bank of America told Plaintiffs their modification was under review and that it was in underwriting, Plaintiffs have failed to identify any evidence to show these statements were untrue. Instead, Plaintiffs direct the Court to twenty pages of their affidavit without pointing to anything within these pages that supports their

claim.[8] Pls.' Resp. 21. Rather than proving Plaintiffs' allegations, these pages tend to show that the file was in fact under review and with the underwriter. *See* Thompson Aff. APP 2–19. To the extent Plaintiffs disagree, the Court reminds them that it is not the Court's responsibility to comb the record to find evidence supporting their position. *See Jones*, 82 F.3d at 1338. It is instead their duty as the non-movant to "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [their] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). As Plaintiffs have failed to discharge this duty, they have not established that these are misrepresentations necessary for their claim.

The second alleged misrepresentation is likewise problematic. Plaintiffs argue in their summary judgment response brief that Bank of America wrongfully told them that "they did not qualify for the HAMP because they were still making payments." Pls.' Resp. 21. Yet, they again fail to identify any evidence that demonstrates this statement was not true. The affidavit on which they rely does nothing more than reiterate the alleged misrepresentation. Thompson Aff. APP 2 ("BOA told us that we would not qualify for the Home Affordable Modification Program ('HAMP') unless we stopped making payments for a few months."). Repeating the statement does not prove its falsehood and, more importantly, cannot support Plaintiffs' claim.

With respect to the alleged misrepresentation that a trial payment plan was being prepared, the evidence is also insufficient to support Plaintiffs' cause. Plaintiffs' affidavit states only that a trial

---

[8] Even the cites within the affidavit are of no help, as they point to a purported conversation log that nowhere demonstrates that Plaintiffs' materials were not actually under review. As mentioned in a previous note, Defendants have objected to, and moved to strike, this exhibit. Defs.' Reply 2. The Court considers this objection elsewhere in its opinion.

agreement would be sent to them. Thompson Aff. APP 5–6. This constitutes a promise of future conduct rather than a misstatement about existing fact. Accordingly, it is not actionable as a negligent misrepresentation. *See Montgomery*, 2012 WL 1353087, at * 6.

Finally, regarding Bank of America's alleged statement that it had received Plaintiffs' loan modification documents but subsequently denied their application because it had *not* received their documents, portions of Plaintiffs' affidavit do suggest that Bank of America provided contradictory information regarding Plaintiffs' application materials. *See, e.g.*, Thompson Aff. APP 3 ("On May 25, 2010, Impact informed us that our application was closed because BOA did not receive updated documents on time, even though BOA stated that all the documents had been received."); *id.* at APP 4 ("On June 23, 2010, BOA confirmed that our file was in review. Later that day, however, BOA said that the file was not in review and it still needed documents. Then on June 28th, Nilo, a BOA representative, said that our file was cancelled on June 24, 2010 . . . On June 30, 2010, BOA confirmed that our file was in review and no additional documents were needed."(internal citations omitted)). Nevertheless, Plaintiffs' claim again falls short.

Plaintiffs' affidavit is merely a recitation of their own Exhibit D, which is an unverified conversation log between individuals *other than Plaintiffs* and Bank of America representatives. As Defendants rightly point out in their evidentiary objections, Plaintiffs have failed to provide anything to authenticate the document or explain why it should not be disregarded as hearsay. *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information not excludable at trial."). Under Rule 901, authentication is a condition precedent to admissibility. Fed. R. Evid. 901. Though "Rule 901 does not limit the type of evidence allowed to authenticate a document," it does require something "which

is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *U.S. v. Jimenez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989); Fed. R. Evid. 901.

Here, Plaintiffs have provided nothing to support their exhibit. They point only to Rule 901(b)(6), which covers telephone conversations, but they fail to offer any information regarding Bank of America's telephone number or what number was actually dialed, as the Rule's subsection describes. Pls.' Resp. Mot. Str. 3. Further, nowhere have Plaintiffs indicated the log's creator, origin, or purpose. Though the Court recognizes that "[a] proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery," the Court does not find that there is enough from the face of this document or the circumstances here to provide such authentication. *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008)(internal quotation marks omitted).

The conversation log appears to be a record of calls between individuals on behalf of Plaintiffs and representatives of Bank of America. However, nothing identifies who these individuals are or for whom they work. Further, the header and footer of the sheets are not consistent throughout the exhibit. *See* Pls.' Ex. D APP 58–59. Similarly the names of the people who presumably spoke with Bank of America representatives vary. *See id.* at APP 58–68 (listing Alma, Laura, Mireya, Ramon, Jessica). For some calls, no one is even identified as a caller. *Id.* at APP 67–68. Accordingly, the Court finds that this log is not authenticated and therefore not properly before the Court.[9]

---

[9] Even if the Court were to consider the exhibit, Plaintiffs' claim would still be deficient, as they fail to demonstrate reliance on this misrepresentation. Plaintiffs offer only that they "justifiably relied" on Bank of America's statements and that Bank of America's misrepresentations caused them to go into default. *See* Pls.' Resp. 21. However, "justifiable reliance" is a legal conclusion reserved for the Court. Further, this alleged misrepresentation occurred *after* Plaintiffs stopped paying their mortgage and therefore could not have been the cause of their default. *See* Pls.' Resp. 21.

Plaintiffs' remaining exhibits offer little with respect to this alleged misrepresentation. As Defendants point out, Plaintiffs' Exhibit B HOPE Loan Portal is also not authenticated. Pls.' Ex. B APP 43–44; Defs.' Reply 2. Though Plaintiffs argue that "[w]hen an affiant has personal knowledge of a report, that it was a printed website as it was maintained at an internet address, and that it had not been altered from that website, then it is properly authenticated," nowhere in their affidavit do they attest to any of these things. Pls.' Resp. Mot. Str. 3; Thompson Aff. Furthermore, the exhibit, which appears to be a printout of a webpage that lists, among other things, the status, sub-status, and comments regarding Plaintiffs' home retention application, does not show inconsistencies with respect to missing documents, and therefore offers no support regarding the alleged negligent misrepresentation concerning Plaintiffs' application materials. *See* Pls.' Ex. B. Similarly, Plaintiffs' Exhibit C Loan History only shows a schedule of payments and does not establish a question of fact with respect to documents received—or not received—for Plaintiffs' modification application. *See* Pls.' Ex. C1. Plaintiffs' Exhibit F Letter Denying Modification is also silent with respect to Plaintiffs' application materials and therefore of no use here.

Finally, Exhibit E Certified Copies of Declarations File for *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation* (No. 1:10-MD-02193 Doc. 210), which include Exhibits E-1 through E-6, is problematic for several reasons. First, the declarants do not speak to the facts of this case, but rather their experiences in other matters not before this Court. *See* Pls' Exs. E-1–E-6. Further, Plaintiffs appear to offer these declarations for the impermissible purpose of showing that, because Bank of America engaged in illegal or improper acts in *other* cases, it is more likely it did so here. *See* Pls.' Resp. Mot. Str. 4 ("These affidavits show that BOA's own employees discuss exactly the kind of wanton, willful, and malicious actions that took place in the present

case."). However Rule 404(b)(1) is clear that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Though there are possible exceptions to this Rule, Plaintiffs have offered nothing other than the exhibits' relevance to support their admissibility. *See* Fed. R. Evid. 404(b)(2). Finally, given the vagueness of these declarations with respect to where the declarants worked, who instructed them to act improperly, or whether the policies or directives to which they allude were at all related to this case, the Court finds the exhibits' probative value is substantially outweighed by the danger of unfair prejudice and confusing the issues. They should therefore be excluded under Rule 403. Fed. R. Evid. 403.

Thus, the Court is left with Plaintiffs' affidavit, which merely repeats and cites the conversation log that the Court has already disregarded. Because  Plaintiffs have failed to provide competent evidence to show an issue of material fact with respect to Bank of America's statements regarding receipt of their loan application materials, the Court finds the claim based on this alleged misrepresentation must fail.

As Plaintiffs have failed to satisfy the elements of their cause with respect to any of the alleged negligent misrepresentations, the Court **GRANTS** Defendants' motion for summary judgment with respect to this claim.

F.     *Texas Debt Collection Practices Act*

The Court next turns to Plaintiffs' claims under the Texas Debt Collection Practices Act, which is governed by the Texas Finance Code. Tex. Fin. Code. §§ 392.001, *et seq.* In particular, Plaintiffs allege that Defendants: (1) used false representations or deceptive means to collect a debt, in violation of § 392.304(a)(19); (2) misrepresented the character, extent, or amount of a consumer

debt, in violation of § 392.304(a)(8); (3) attempted to collect charges incidental to the obligation, in violation of § 392.303(a)(2); and (4) foreclosed when the law prohibited it, in violation of § 392.301(a)(8). Tex. Fin. Code. §§ 392.001, *et seq.* The Court considers each alleged violation below.

1.    Section 392.304(a)(19): Misrepresentations and Deceptive Means of Collection

"Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from using any other false representation or deceptive means to collect a debt." *Williams v. Wells Fargo Bank, N.A.,* — F. App'x —, 2014 WL 1044304, at *6 (5th Cir. 2014)(per curiam). "To violate the [Texas Debt Collection Act] using a misrepresentation, 'the debt collector must have made an *affirmative statement* that was false or misleading.'" *Id.* (quoting *Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013))(emphasis added).

Plaintiffs claim that "Defendants misrepresented the character and extent of Plaintiffs' mortgage loan, and wrongfully foreclosed on the Property." First Am. Compl. 35. As examples, they offer the same five alleged misrepresentations discussed above as well as a new representation—that their modification request was completed by the underwriter and with the Quality Control Department for final approval. Pls.' Resp. 24. In addition, Plaintiffs claim that these misstatements are consistent with "willful, wanton, and malicious policies and practices utilized by BOA in its collection efforts" of their and others' loans. Pls.' Resp. 24.

For support, Plaintiffs cite to the same twenty-page section of their affidavit, the unauthenticated conversation log, and the copies of declarations on which they relied before. Consequently, their claim suffers from the same evidentiary deficiencies discussed above. The evidence that Court may properly consider—that is, what has been properly authenticated and is relevant to this matter—simply does not show that any of these were false or misleading assertions.

Furthermore, having discussions about loan modifications does not constitute "deceptive means" to collect a debt. *See Garza v. EMC Mortg.*, No. 3:11–CV–3504–M(BF), 2014 WL 1016958, at *5 (N.D. Tex. Mar. 14, 2014) (slip copy). Consequently, the Court **GRANTS** Defendants' motion for summary judgment with respect to Section 392.304(a)(19).

      2.      <u>Section 392.304(a)(8): Misrepresentation of the Character or Extent of Debt</u>

Section 392.304(a)(8) "prohibits a debt collector, in relevant part, from 'misrepresenting the character, extent, or amount of a consumer debt.'" *Lombardi v. Bank of Am.*, No. 3:13–CV–1464–O, 2014 WL 988541, at *14 (N.D. Tex. Mar. 13, 2014) (slip copy).

Plaintiffs allege the same misrepresentations discussed with respect to Section 392.304(a)(19) constitute violations of Section 392.304(a)(8) as well. Pls.' Resp. 24. In addition, they claim that, "[b]ecause of Defendants' conduct, Plaintiffs believed that as long as they continued to cooperate with BOA and supply the necessary requested documentation, their permanent modification was imminent." First. Am. Compl. 35. As with the previous claim, Plaintiffs have failed to produce competent evidence that shows Bank of America misled them about their mortgage, the status of their modification application, or the pending foreclosure. The Deed of Trust makes clear that the lender does not waive its right to foreclose, notwithstanding any forbearance in exercising its rights. Defs.' Ex. A-2 APP 18 at ¶ 12. What's more, there is no evidence that a permanent modification or suspension of foreclosure was guaranteed. Plaintiffs admit they repeatedly submitted documents so that their modification application *could be reviewed* and likewise made *requests* for the foreclosure sale to be postponed. *See, e.g.,* First Am. Compl. 11–12 at ¶¶ 35–36. Discussions Plaintiffs—or their agents—may have had with Bank of America representatives regarding the loan modification or the postponement of foreclosure "are not representations or misrepresentations of the amount or

character of a debt." *Garza*, 2014 WL 1016958, at *5.

In other words, Plaintiffs have offered no evidence that, because of Defendants' affirmative statements, they were unaware that (1) they had a mortgage obligation, (2) they had defaulted on their loan, (3) they owed a specific amount to cure their default, or (4) foreclosure was being pursued. Instead, they have conceded that they received notices that expressly advise them of their default, the amount they owe, the steps necessary to cure, and the risk of foreclosure. Consequently, the Court finds that Defendants' motion should be **GRANTED** with respect to Section 392.304(a)(8). *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (affirming dismissal of claim under § 392.304(a)(8) where plaintiffs "always were aware (i) that they had a mortgage debt; (ii) of the specific amount they owed; (iii) and that they had defaulted," and nothing in their allegations suggested lender had led them to believe differently).

3.      Section 392.303(a)(2): Collection of Charges Incidental to the Obligation

Section 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code. § 392.303(a)(2). Here, the Note and Deed of Trust expressly provide that the lender may charge fees in the event of a default. *See* Defs.' Ex. A-1 APP 7 at ¶ 7; Defs.' Ex. A-2 APP 18 at ¶ 14. Though Plaintiffs concede this point, they counter that Defendants were not authorized to over-charge for late fees and corporate advances. Pls.' Resp. 23. Further, they assert that "Defendants were not allowed to induce Plaintiffs into default and then delay the loan modification process for over three years all the while charging late fees and incidental charges." *Id.* Once again, Plaintiffs have failed to provide evidence that they were overcharged.

- 31 -

Further, they have not demonstrated that they were "induced into default," that the loan process was impermissibly drawn out, or that Defendants did not have a right to collect fees during the pendency of their loan review process. Thus, Plaintiffs' claim is without merit, and the Court **GRANTS** Defendants' motion with respect thereto.

4.    Section 392.301(a)(8): Actions Prohibited by Law

Section 392.301(a)(8) provides: "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ practices . . . threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). Plaintiffs argue that "Defendants were prohibited by law from foreclosing because their rights to accelerate and foreclose had never matured because Defendants acted illegally and did not comply with the Deed of Trust." Pls.' Resp. 23. Notably, Plaintiffs have offered no evidentiary or legal support for their position. Further, the Court has already found that Defendants complied with the notice requirements of the Deed of Trust and the Texas Property Code. Because Plaintiffs have failed to establish that Defendants breached any law or contract with respect to the foreclosure, their claim regarding Section 392.301(a)(8) must fail. Thus, the Court **GRANTS** Defendants' motion with respect to this section as well.

G.    *Common Law Fraud*

The Court next considers Plaintiffs' claim for common law fraud, which Plaintiffs plead as an alternative to their negligent misrepresentation claim. First Am. Compl. 37. The elements of common law fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff

- 32 -

act on it; (6) the plaintiff relied on the representation; and (7) the representation caused plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

Plaintiffs do not address this claim specifically within their summary judgment response, however the Court will consider their references to Defendants' alleged promises to modify their loan as well as the other alleged misrepresentations regarding the status of their loan to assess the purported fraud. *See* Pls.' Resp. 17–18 ("The evidence in this case shows that Defendants promised Plaintiffs repeatedly over three years that it would modify their loan and represented to Plaintiffs that the modification was almost complete."); First Am. Compl. 38 ("As discussed above, Defendants made several false representations which Plaintiffs relied upon and suffered injury."). For the same reasons Plaintiffs were unable to support their claims of negligent misrepresentation or violations of the Texas Debt Collection Act, they cannot establish their allegations of fraud. Not only have they mischaracterized Defendants' alleged statements as "promises" to modify their loan, they have also failed to provide evidence that what was said was untrue. *See* Pls.' Resp. 17–18 (". . . Defendants promised Plaintiffs repeatedly . . . that it would modify their loan . . . ."); Thompson Aff. APP 2–19 (repeated references to Bank of America's advising them their file was "under review"). Consequently, their claim cannot stand, and Defendants' motion is **GRANTED.**

H.    *Equitable Relief*

Plaintiffs include within their complaint a section entitled "Equitable Relief," in which they argue that Defendants were not entitled to foreclose because they did not have clean hands. *See* First Am. Compl. 38. In particular, they claim that Defendants dragged out the loan modification process, provided inconsistent and incorrect information throughout the review, and then deceptively

- 33 -

foreclosed on the property based on incorrect and outdated information. *Id.* Because the Court has already found that Plaintiffs' claims regarding the foreclosure and loan modification process cannot withstand summary judgment, it finds Plaintiffs' argument here to be likewise unavailing.

I.     *Declaratory Judgment*

One of the remedies Plaintiffs seek is a declaratory judgment under the Texas Declaratory Judgment Act. First Am. Compl. 39; Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.* "Federal district courts cannot award relief pursuant to the Texas Declaratory Judgment Act ('TDJA') because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules." *Miller v. CitiMortgage, Inc.*, — F. Supp. 2d. —, 2013 WL 4766808, at *17 (N.D. Tex. 2013) (internal quotation marks omitted). Because this case was removed from state court, it may be construed as one brought under the Federal Declaratory Judgment Act ("FDJA"). *Id.* The FDJA provides district courts with broad discretion in deciding whether declaratory relief is appropriate. *See Falk v. Wells Fargo Bank*, No. 3:09–CV–678–B, 2011 WL 3702666, at *4 (N.D. Tex. Aug. 19, 2011); 28 U.S.C. §§ 2201–2202. Like the TDJA, the FDJA is a procedural device that creates no substantive rights. *Miller*, 2013 WL 4766808, at *17. Further, a request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action. *Id.*

Plaintiffs here base their request on Defendants' alleged breach of contract and wrongful foreclosure. First Am. Compl. 39. The Court has already found that these causes cannot withstand summary judgment. Accordingly, there is no viable cause of action to which this remedy could attach, and Plaintiffs' request must be **DENIED** as a matter of law. *See Williams*, 2014 WL 1044304, at *9 ("Our conclusion that each of [plaintiffs'] causes of action was properly dismissed likewise warrants affirmance of the court's dismissal of their request for declaratory judgment.").

J.      *Accounting*

Plaintiffs also request an order for accounting of all transactions on their mortgage loan. *See* First Am. Compl. 39. "An action for accounting may be sought in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App.—Corpus Christi 2001, not pet.), *abrogated on other grounds as recognized by Buck v. Palmer*, 379 S.W.3d 309, 322–23 (Tex. App.—Corpus Christi 2010, pet. filed). Plaintiffs seek an accounting as part of the remedies sought in this matter. As the Court has found that none of their claims can withstand summary judgment, they are not entitled to relief in this form and their request is therefore **DENIED**.

K.      *Suit to Quiet Title and Trespass to Try Title*

Finally, Plaintiffs seek to quiet title in the property in their favor. "To recover on a quiet title or a trespass to try title action, a plaintiff must recover upon the strength of his own title." *Williams*, 2014 WL 1044304, at *8 (internal quotation marks omitted). Thus Plaintiffs' request turns on their contention that Defendants had no right to foreclose, making the foreclosure sale void. *Id.* Because the Court has concluded that Defendants did not breach the Deed of Trust, waive the right to foreclose, or otherwise conduct a wrongful foreclosure, Plaintiffs cannot establish the superiority of their title. *Id.* Accordingly, their requests to quiet title and trespass to try title are **DENIED**.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 25) is **GRANTED** as to all claims. The Court therefore **ORDERS** this case **DISMISSED WITH PREJUDICE**.

SO ORDERED.

SIGNED: April 7, 2014.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE